CALEDONIA,
July,
1839

James Lindsay v. Isabella Lindsay.

The *delivery* of a deed is a question of fact.

The court may instruct the jury to find for the plaintiff, if the testimony is believed, when the whole testimony directly shows the main fact in issue for the plaintiff, or shows such facts that therefrom the main fact is a positive or absolute inference of law   But when there is any conflicting testimony, or when only such facts are shown that therefrom the jury may infer the main facts, then the case should be left to the jury, under proper instructions.

THIS was an action of ejectment for a lot of land in the town of Barnet.

Plea, general issue, and trial by jury.

Upon the trial in the county court, it was admitted, that the title of the land in dispute was in Andrew Lindsay, previous to the 9th of January, 1838, and that the defendant was in possession of it at the commencement of this suit.   The plaintiff's title to the land depended altogether upon the validity of a deed executed, or claimed to have been executed, by the said Andrew, (who was the plaintiff's father and defendant's husband,) on the 11th day of January, 1838, a few days before his decease.   The dee і was read in evidence by the plaintiff.   It not having been recorded, the plaintiff gave the following testimony :

John Shaw, town clerk of Barnet, testified that he was present at the time when Andrew Lindsay signed, sealed and acknowledged the deed.   After the deed was executed, the grantor gave it to the witness and told him it was "not for record now," and also told him "to take it and keep it." This was on the eleventh of January, 1838.   About two weeks before the said Andrew died, he sent for the witness to come to his house, and when the witness arrived there, the said Andrew produced the deed above mentioned, which was filled up except the grantee's name, which the said Andrew then inserted.   The said Andrew did not, at that time, consider himself dangerously sick.   There was another deed executed in the same manner, at the same time, to his son Peter.   The two deeds included the home farm and all the grantor's real estate, except a lease lot.   The plaintiff was, at this time, in Boston.   The witness did not know of any consideration having passed for the deed.   The plaintiff was

then about twenty years of age.   The grantor had three sons and one daughter.   The grantor made his will about six days afterwards.

William Shearer testified that he was present at the acknowledgment of the deeds.   He found the grantor a distressed man.   The grantor spoke of settling his affairs and asked his wife to leave the room, and told Peter to bring him the two deeds, and they were brought accordingly.   The grantor then dated and signed the deeds, and asked Shearer to witness them, and Shearer thereupon witnessed the deeds.

The grantor said that the deeds conveyed his farms to his two sons, that he wished to keep them under his control, and if he recovered from his sickness, he should not deliver them, if not, he intended to have the deeds convey the lands to his sons.   The grantor further said that he should make his will the next day, and intended to give his daughter as good as a thousand dollars, and named his other son.   The lease lot belonged to the widow.   The plaintiff returned from Boston after his father's decease.

The defendant offered the following testimony :—

The last will of the grantor and the adjudication of the probate court disallowing it.   The appraisal of the estate, as returned to the probate court, amounting to $8,666,28. The farm in dispute,was appraised at $2,434—the other farm at $2,316,00—the personal estate at $3670,40.   The debts allowed against the estate were $2,196,37, four hundred dollars of which was allowed to Margaret Lindsay, from which allowance an appeal was taken.   The letters of administration were admitted.

The judge of probate was a witness, and testified that the plaintiff did not object to the allowance of the will, but that the defendant did ; that there had already been assigned to the widow $481,10 in personal estate, and that there had been no final settlement of the estate.

It was also shown that the testator was informed, after the execution of the will, that it was not valid, and that he replied "let it be, see how it will turn ; he hoped they would not try to break it ; but, at all events, they could not break the deeds ; they must hold."

The county court decided, that, if the testimony was believed, the plaintiff was entitled to a verdict.   The jury

returned a verdict for the plaintiff, and the defendant excepted .

*Upham, Hale and Peck,* for defendants.

CALEDONIA,
July,
1839.

Lindsay
*v.*
Lindsay.

1. The case shows no delivery of the deed, under which the plaintiff claims title to the land in question.

In order to constitute a valid delivery of a deed, the grantor must part with the possession of it in such a manner as to deprive him of the right to recall it. *Kirk* v. *Turner,* Dev. Eq. 14. 1 Eq. Dig. p. 397, pl. 7. *Maynard* v. *Maynard* 10 Mass. R. 56. 5 Barn. & Cress. 671, reported in 12 Com. L. R. 351.

Placing a deed in the hands of a stranger for safe keeping, is no delivery of it. *Barlow* v. *Haiton,* 1 A. K. Marshall 98. Eq. Dig. p. 397, pl. 11 and 12. 10 Mass. R. 456. *Barnes* v. *Hatch et al.,* 3 N. H. R. 304.

Again, it is essentail to the legal operation of a deed that the grantee assent to receive it in the lifetime of the grantor, and there can be no delivery without such assent. *Jackson* v. *Dunlap,* 1 Johns. Cas. 114. *Jackson* v. *Phipp,* 12 Johns. R. 418. 3 N. H, R. 304.

It is laid down in Cruise's Dig. 4 vol. p. 27, pl. 85, "that a deed may be delivered to the party himself, or to any other person, by sufficient authority from him, or it may be delivered to a stranger for, and in behalf, and to the use of him to whom it is made, without authority." But if it be delivered to a stranger without any such declaration, it seems that it will not be a sufficient delivery. 7 Conn. R. 501.

Shaw, the town clerk, was a mere depository of the deed and had no right to deliver it without further directions from the grantor. *James* v. *Vanderheyden,* 1 Paige, Ch. R. 384, 388.

The grantor intended to keep the deed under his control during his life, and while he had that control it could not be considered a delivered deed. After a deed has been duly executed and delivered the grantor has no right to control it. It is beyond his power, and if he should get possession of it and destroy it, the title of the grantee would not be affected or impaired by such act of the grantor. *Nicholson* v. *Halsey,* 1 Johns. Ch. R. 417. *Naldred* v. *Gilham,* 1 Pr. Wm.'s 577. *Cotton* v. *King,* 2 Pr. Wm.'s 358.— *Souverbye* v. *Arden,* 1 Johns. Ch. R. 240, 258.

2. Andrew Lindsay could not create an authority to be executed after his death.

It seems to be well settled, that all authority conferred by the principal is determined by his death. Litt. Sec. 66.— Co. Litt. 52.  4 Bro. Ch. R. 291.  Sugden on Powers, 183. Story on Bailment, 140, sec. 205, and cases cited.  2 Mason, 244.  8 Wheat. 174.  6 East. 356.  2 Ves. & B. 51.  2 Kent's Com. 507.

If it is insisted that the deed was an *escrow* in the hands of Shaw, and might as well be delivered after the death of the grantor as before, we answer, that in every case of an escrow, there is a contract and privity between the grantor and grantee ; the person to whom the deed is delivered, is, by mutual agreement, constituted the agent of both parties ; he does not hold the deed subject to the control of the grantor ; the grantor has no power over it, and can no more countermand the delivery of an *escrow* than of an absolute deed.

3. The plaintiff's deed, as it was not to take effect until after the death of the grantor, must be treated as a testamentary instrument.  It is said, in Powel on Dev. p. 13, "that a deed, if made with a view to a man's estate after his death, will inure, in law, as a devise or will."

In the case of *Habergham* v. *Vincent*, 2 Ves. jr. 204, all the authorities which bear upon this question are collected ; on which Justice Buller says, "these cases have established that an instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place until after the death of the person making it, shall operate as a will." The cases for that are both at law and equity, and in one of them there are express words of immediate grant and consideration to support it as a grant, but as, upon the whole, the indenture was that it should have a future operation, after death, it was considered as a will.  Vide p. 231.

The instrument, in *Habergham* v. *Vincent,* was, in form, a deed, attested by two witnesses, but as it was not intended to operate until after the death of the grantor, it was held to be a will, and void for want of three witnesses.  *Green* v. *Proude,* 1 Mod. 117.  *Hexon* v. *Wytham,* 1 Ch. Cas. 248. *Att'y General* v.*Bartlett,* 3 Price 368.  Sugden on Powers,220.

4. The case shows it was the intention of Andrew Lindsay, the grantor, to make a testamentary disposition of his

property, and the two deeds and the will can avail for that purpose, and must be regarded as one transaction, and stand or fall together; if the will has failed for want of due execution the deeds must fail. They cannot be proved unconnected with the will, as testamentary papers, for the want of a third witness. *Habergham* v. *Vincent*, 2 Ves. Jr. 209. *Mantague et al.* v. *Titcombe*, 2 Vern. 518. *Atkins* v. —— *et al.* 1 Burr. 60. *Crop* v. *Norton*, 2 Atk. 74, 76. *Jackson* v. *Trowbridge*, 1 Johns. Cas. 91. 15 Johns. R. 458.

5. The testimony introduced by the plaintiff, to show who objected to the probate of the will, and that the testator was informed, after its execution, that it was invalid, was improperly admitted in the court below. *Hall* v. *Hills*, 8 Conn. R. 39, 42. 1 Phil. Ev. 126.

*J. Mattocks*, for plaintiff.

The question is, whether the deed to the plaintiff was perfected by a sufficient delivery.

1. A defective conveyance is good against heirs.

2. No form of words, nor specific act is necessary to constitute a delivery of a deed; but it is sufficient, if, from the circumstances of the case, it appears to have been the intent of the grantor to have the deed operate as a conveyance. 1st Equity Dig. 386, a. 22. 387, a. 31, 33. 393, a. 90. 395 a. 107. 396, a. 108, 13. 400, a. 39, 40, 41, 47. 401, a. 3. 404, a. 28. 405, a. 12. 407, a. 33, 34, 35. 408, a. 37, 40. Croke's Elizabeth, *Sheltons'* case, page 7. 4 Cruise, 27, a. 80, 83, 84. Coke's Reports Ab. 288. *Thoroughgood's* case. Shepherd's Touchstone 56. Digest, N. York Reports, first vol. 302, 3. 3 Comyn's Digest, 158. 1 Swift's Dig. 125, 6. 197. 123, 4. 4 Day's R. 66. 4 Dane, 89, a. 5. *Paulding* v. *U. States*, 90, a. 11. 4 Cranch, 219, 20. also, 1st Johnson, C. R. 240.

3. The giving of these lands was in the nature of a "*donatio causa mortis*," and the deeds, which were in the hands of the town clerk, were in possession of the grantee after the grantor's death. "In a mixed possession, the law will adjudge the possession to be in him who has the right." *Smith* v. *Smith*, 2 Strange's R. 955.

4. It is objected that the deeds should not stand, because the will failed. We answer;—

First. "The method of the court is not to set aside the intent, because it cannot take effect so fully as the testator desired, but to let it work so far as it can." *Thelluson* v. *Woodford*, 4 Vesey, Jr. 325. Second. It is only in wills that there is an implied revocation, where part of the property willed is conveyed. "Both cannot take effect; that by the deed must." *Cave* v. *Holford*, 3 Vesey, Jr. R. 663.

5. It is no reason for avoiding a settlement, that it becomes unreasonable by matter *ex post facto.* 2 Comyn's Digest, 420, 1.

6. What is considered on this point, is, that the case shows that the grantor had full knowledge, before his death, that the will was defective, and still affirmed the deeds. *Wheelright* v. *Wheelright*, 2 Mass. R. 447. *Hatch & Wife* v. *Hatch & another*, 9 Mass. R. 307. *Maynard* v. *Maynard*, 10 do. 408. *Fairbanks* v. *Metcalf*, 8 do. 239.

The opinion of the court was delivered by

COLLAMER, J.—It may be proper for a court to instruct a jury to find for a plaintiff if the evidence is believed, when there is no conflict of evidence and it directly proves the fact in issue, or when that fact is a necessary and invariable *inference of law*, from what is proved. But, if there be any conflict in the evidence, or if it only shows facts from which the main fact is to be *presumed or inferred by the jury*, the case should be left to the jury, under proper legal instructions.

The *delivery* of a deed, either as an escrow or absolutely, is an act including *intent*. It may be by words, without act, by an unequivocal act only, or by both combined. Hence, it is always a question of fact, resting *in pais*, and to be found by a jury, under proper instructions of the court. The plaintiff's evidence of the delivery of his deed was the testimony of two witnesses, who differ in what took place, and neither of them directly proved a delivery, nor even a direction to deliver it to the plaintiff, on the decease of the grantor. The utmost extent of the testimony was to facts, from which the jury might have inferred that the grantor so intended, but there was no ground for *inference of law.*

The defendant's testimony, partly derived from the plaintiff's witnesses, and partly from her own showing, was, that

the deed was part of a testamentary arrangement, and was, with the deed to the other son, and the will, to make an entire transaction, no part of which was to be operative without the whole.

The case should have been left to the jury, under proper instructions. If it was the intent of the deceased that this deed should not be delivered to the plaintiff, nor to take effect unless the whole arrangement went into effect, without regard to who prevented it, then the plaintiff should not recover. Whether, if it was his intent that the deed should be delivered to the plaintiff, and take effect, absolutely, on the grantor's decease, regardless of the will, the deed was sufficiently delivered, we do not decide, because, we do not perceive, from the case, that such fact is found or must have been found, if the testimony was believed.

Judgment reversed.